```
                                                        U.S. DISTRICT COURT
                                                        DISTRICT OF VERMONT
                                                              FILED
```

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT           2022 JUL -7 AM 11: 49

```
                                                           CLERK
                                                            EH
                                                    BY_____
                                                         DEPUTY CLERK
```

TIFFANY RILEY,
    Plaintiff,

v.                                                    Case No.: 5:20-cv-108

WINDSOR SOUTHEAST SUPERVISORY UNION,
MOUNT ASCUTNEY SCHOOL DISTRICT BOARD,
DR. DAVID W. BAKER, individually and in his official
capacity as Superintendent of the Windsor Southeast
Supervisory Union,
ELIZABTH BURROWS, individually and in her official
capacity as chair of the Mount Ascutney School District Board,
AMY MCMULLEN, individually and in her official capacity
as the vice-chair of the Mount Ascutney School District Board,
BETH CARTER, individually and in her official capacity as
a member of the Mount Ascutney School District Board,
KRIS GARNJOST, individually and in his official capacity as
a member of the Mount Ascutney School District Board,
NANCY PEDRICK, individually and in her official capacity
as a member of the Mount Ascutney School District Board, and
BILL YATES, individually and in his official capacity as a
member of the Mount Ascutney School District Board,
    Defendants.

## SECOND AMENDED COMPLAINT

NOW COMES the Plaintiff, Tiffany Riley, by and through her attorneys, Meub Associates, PLC, in the above-captioned matter and complains as follows:

1. The Plaintiff, Tiffany Riley, is a resident of Redding, Vermont (hereinafter the "Plaintiff").

2. The Defendant, Windsor Southeast Supervisory Union (WSESU), is a supervisory union under Title 16 of the Vermont Statutes that contains the Windsor PK-12 School (hereinafter the "Windsor School").

1

3. The Defendant, Mount Ascutney School District Board, is a school board within the WSESU and is responsible for the administration of the Windsor School, including employment decisions related to the position of Principal (hereinafter the "School Board").

4. Defendant Elizabeth Burrows, at all times relevant to this pleading, was the chair of the Mount Ascutney School District Board, and she is being sued in both her individual and official capacities.

5. Defendant Amy McMullen, at all times relevant to this pleading, was vice-chair of the Mount Ascutney School District Board, and she is being sued in both her individual and official capacities.

6. Defendant Beth Carter, at all times relevant to this pleading, was a member of the Mount Ascutney School District Board, and she is being sued in both her individual and official capacities.

7. Defendant Kris Garnjost, at all times relevant to this pleading, was a member of the Mount Ascutney School District Board, and he is being sued in both his individual and official capacities.

8. Defendant Nancy Pedrick, at all times relevant to this pleading, was a member of the Mount Ascutney School District Board, and she is being sued in both her individual and official capacities.

9. Defendant Bill Yates, at all times relevant to this pleading, was a member of the Mount Ascutney School District Board, and he is being sued in both his individual and official capacities.

2

10. Defendant Dr David W. Baker was, at all times relevant to this pleading, employed as the superintendent of the WSESU, and he is being sued in both his individual and official capacities.

### Factual Background

11. The Plaintiff was employed as the Principal at Windsor PK-12 School, a public institution organized and existing under the laws of the State of Vermont located in Windsor, Vermont.

12. The Plaintiff had been employed as the Principal at The Windsor School since 2015.

13. The terms of the Plaintiff's employment as principal through June 30, 2020, was governed by a written contract between the Plaintiff and the Defendants. A full copy of the Contract between the Plaintiff and Defendants ending June 30, 2020 is attached as **Exhibit 1**

14. On April 3, 2020, Plaintiff and Defendants executed a written contract to extend the Plaintiff's employment as Principal at the Windsor School through June 30, 2022. A copy of the contract for the 2021 and 2022 school years is attached hereto as **Exhibit 2**.

15. The Plaintiff is a member of the VPA Equity Practitioners Network Initiative, an initiative sponsored by the Vermont Principals' Association focused on "increasing Equity Literacy in Vermont's schools through public engagement, individual practice, and the development of local equity literate teams."[1]

16. The Plaintiff has promoted and been a leader for greater equity at Windsor PK-12 School for race, gender, and other interests, and she has sought to promote education and understanding of the issues associated with equity issues at Windsor PK-12 School.

---

[1] https://vpaonline.org/leaders/vpa-equity-initiative/ (VPA Equity Initiative's Website)

3

17. Since at least 2016, the Black Lives Matter ("BLM") movement has been a subject of social and political discourse throughout the entire nation, including the state of Vermont.

18. In May and June of 2020, the BLM movement gained additional national attention when they participated in nationwide protests and demonstrations in response to the death of George Floyd, advocating for social change and criminal justice reforms.

19. In May and June of 2020, the BLM movement was and continues to be the focus of significant political discourse in the national and local media, and there have been reports of violence occurring between law enforcement officials and protesters associated with the BLM movement.[2]

20. In June of 2020 there was an issue related to the graduation arrangements and decoration of the Windsor School grounds, that related to the head of buildings and grounds making of an American flag on the athletic field. There was a request to remove the American flag and related issues that were handled by the Plaintiff and the Superintendent Dr. Baker.

21. There was also a request to include the BLM flag that was rejected by the Superintendent.

22. Other communications occurred about the graduation event.

23. The graduation activities for Windsor School were held with no BLM flag.

24. There were people that disagreed with what was done regarding graduation and how it was done.

25. On June 10, 2020, Plaintiff posted the following statement on her personal Facebook page to be seen by the less than the 300 friends that she has on her Facebook page:

> "I firmly believe that Black Lives Matter, but I DO NOT agree with the coercive measures taken to get to this point across; some of which are falsified in an

---

[2] https://www.cnn.com/us/live-news/black-lives-matter-protests-06-24-2020/index.html (index of current BLM related news stories)

4

attempt to prove a point. While I want to get behind BLM, I do not think people should be made to feel they have to choose black race over human race. While I understand the urgency to feel compelled to advocate for black lives, what about our fellow law enforcement? What about all others who advocate for and demand equity for all? Just because I don't walk around with a BLM sign should not mean I am a racist" (hereinafter the "First Facebook Post")

26. Someone from the Windsor School community copied the First Facebook Post and shared it generally.

27. Some people in the community of the Windsor School objected to her post.

28. Dr. Baker objected to her First Facebook Post and directed her to remove it and the entire thread which the Plaintiff helped to explain the circumstances and her intent with her First Facebook Post.

29. Plaintiff then removed the First Facebook Post and the entire thread and posted the following statement on her personal Facebook Page:

"While self reflecting, researching, learning, and trying to make myself more aware of the struggles of the BLM movement, I recently made a public post that unintentionally offended many people. I understand the struggle of the black lives community and stand with them in the fight against racism. Prejudice, discrimination and racism has no place in the world. I love and support my community and will continue to reflect on, learn from, and continue to pursue equity moving forward." (hereinafter the "Second Facebook Post")

30. On June 12, 2020, Plaintiff received a letter from Dr. Baker, Superintendent of Windsor Southeast Supervisory Union, stating that due to her Facebook Posts, the School Board had voted to terminate her employment, and she was to be placed on administrative leave while the parties negotiated a severance package for her termination. A full copy of Dr. Baker's letter to the Plaintiff is attached hereto as **Exhibit 3** (hereinafter "Dr. Baker's Letter").

31. Dr. Baker's Letter states that the School Board "see no path forward for your leadership at the school given your recent post on Facebook and subsequent reaction to that post.

5

Effective immediately, the Mount Ascutney School Board is placing you on paid administrative leave while we negotiate an exit strategy."

32. Dr. Baker's Letter to the Plaintiff states that the School Board had instructed Dr. Baker to "enter into negotiations with you about a suitable severance package and a resignation from you."

33. Dr. Baker also made public statements that the Plaintiff's First Facebook Post was "outright racist." A copy of an article quoting Dr. Baker published by the Valley News on June 12, 2020, quoting Dr. Baker is attached hereto as **Exhibit 4**.

34. Dr. Baker also made statements to others that there was "much more to the story" with regards to the School Board's decision to put the Plaintiff on administrative leave.

35. On June 12, 2020, the School Board issued a public statement condemning the Plaintiff and her Facebook posts (hereinafter the "School Board's Public Statement") and provided a copy of the public statement to the Plaintiff by email. A full copy of the School Board's Public Statement is attached hereto as **Exhibit 5**.

36. The School Board's Public Statement was also emailed directly to parents, caregivers, and staff involved in the school district.

37. The School Board's Public Statement was signed by Defendants Elizabeth Burrows, Amy McMullen, Beth Carter, Kris Garnjost, Nancy Pedrick, and Bill Yates.

38. The School Board's Public Statement was also published on the WSESU website.

39. The School Board's Public Statement asserts that the School Board was "uniformly appalled by Principal Tiffany Riley's recent facebook post," referring to the First Facebook Post as well as to the Second Facebook Post.

6

40. The School Board's Public Statement asserts that "[t]he ignorance, prejudice, and lack of judgment in these statements are utterly contrary to the values we espouse."

41. The School Board's Public Statement asserts that Plaintiff's Second Facebook Post "acknowledged no culpability, expressed no specific contrition or empathy, and showed no humility."

42. The School Board's Public Statement asserts that Plaintiff's "continued role as our school leader damages the school and its students."

43. The School Board's Public Statement asserts that the School Board had voted unanimously to "place Ms. Riley on paid leave, effective immediately, and we are resolved that she will no longer lead our school."

44. Defendant Elizabeth Burrows, chair of the School Board, made a public statement to the Valley News that "We do not intend to hire her back" and "We wanted to make sure we acted as quickly as we possibly could." Defendant Burrows' statement was published on June 14, 2020, by the Valley News. A full and complete copy of the Valley News story quoting Defendant Burrows is attached hereto as **Exhibit 6.**

45. The Defendants have dismissed the Plaintiff from her employment when they put her on paid administrative leave and instructed her to negotiate a severance package without seeking any input or explanation from the Plaintiff or considering any other information including her past performance and activities promoting equity (As her first Count, Plaintiff has requested a declaratory judgment from the Court that the actions and statements of Superintendent Baker and the School Board were a dismissal/termination of employment as a matter of law).

7

46. The Defendants' public statements, both written and verbal about the Plaintiff have damaged her and created reasonable expectations that the Plaintiff will not be able to find future employment as a principal or school administrator in an area within reasonable distance from her home and have otherwise harmed the Plaintiff.

47. The Defendants assert that Plaintiff was not dismissed/terminated on June 12, 2020.

48. Defendants took a vote on July 27, 2020, to terminate the Plaintiff for cause and notified Plaintiff of this vote on July 28, 2020.

49. Defendants held a hearing pursuant to 16 V.S.A. § 243(d) in connection with the vote to terminate the Plaintiff for cause on July 27, 2020.

50. Plaintiff asserts that the Defendants' vote to terminate the Plaintiff for cause on July 27, 2020, and the 243(d) hearing that was held in connection with that vote was wrongfully held and has harmed the Plaintiff.

51. Other employees of the School District, as well as members of the School Board have made social media posts that are supportive of the BLM message on their personal social media pages.

52. To best of Plaintiff's knowledge, no other employees of the Windsor School have suffered negative employment actions or repercussions in response to posting social media posts that are supportive of the BLM message.

53. 42 U.S.C. § 1983 creates a cause of action for any person injured by a deprivation of rights secured by federal law and/or the United States Constitution.

### COUNT 1
*Request for Declaratory Judgment that the Plaintiff was dismissed/terminated on June 12, 2020*

54. Plaintiff restates and realleges paragraphs 1-53 as if fully stated herein.

8

55. Plaintiff requests that the Court issue a declaratory judgment that, as a matter of law, Plaintiff was dismissed/terminated on June 12, 2020, based on Dr. Bakers June 12th Letter to the Plaintiff, the School Boards June 12th Public Statement, and the public statements made by Dr. Baker and members of the School Board to the press.

**COUNT 2**
*First Amendment Violation – Retaliation*
**42 U.S.C. § 1983**

56. Plaintiff restates and realleges paragraphs 1-55 as if fully stated herein.

57. Plaintiff's Facebook posts concerning the BLM movement involved a matter of public concern because it involves an issue of social and political interest to the community

58. The Plaintiff was speaking as a private citizen rather than as an employee at the time she made her Facebook Posts.

59. The Defendants' interests in effective and efficient fulfillment of their responsibilities and duties do not outweigh the Plaintiff's free speech interests.

60. In response to the Plaintiff's Facebook Posts, the Defendants dismissed the Plaintiff from her position of employment as Principal of the Windsor School.

61. Dismissing the Plaintiff from her position of employment is an adverse employment action.

62. The Plaintiff's Facebook Posts played a substantial part in the Defendants' decision to dismiss the Plaintiff.

63. The Defendants would not have made the same decision to dismiss the Plaintiff if the Plaintiff had not made the Facebook Posts.

64. The Defendants, acting under color of State Law, deprived Plaintiff of her first amendment rights under the United States Constitution by taking an adverse employment action against the Plaintiff based upon Plaintiff's protected speech.

65. The Plaintiff has been injured by the Defendant's violation of the Plaintiff's first amendment rights under the United States Constitution.

66. The Plaintiff is entitled to an award of monetary damages, including punitive damages, in an amount to be determined by a jury, equitable relief, and the reasonable attorney fees and costs of this lawsuit pursuant to 42 U.S.C. §§ 1983 and 1988.

### COUNT 3
*First Amendment Violation – Viewpoint Discrimination*
**42 U.S.C. § 1983**

67. Plaintiff restates and realleges paragraphs 1-66 as if fully stated herein.

68. The Defendants, acting under color of State Law, deprived Plaintiff of her first amendment rights under the United States Constitution by taking an adverse employment action against the Plaintiff based upon Plaintiff's protected speech.

69. The Defendants violated the Plaintiff's first amendment rights by taking an adverse employment action based on the viewpoint expressed in the Plaintiff's protected speech.

70. The Defendants took this action because the Plaintiff's Facebook Posts were perceived by the Defendants as being opposed to the BLM message.

71. The Defendants took this action because of the viewpoints expressed in the Plaintiff's Facebook Posts.

72. Other employees of the school district and members of the School Board have made social media posts that are perceived as supportive as the BLM message and the School Board has not taken any action against those persons.

73. The Defendants would not have taken this action if the Plaintiff's Facebook Posts had been perceived by the Defendants as being supportive of the BLM message.

74. The Plaintiff has been injured by the Defendant's viewpoint discrimination, which is a violation of the Plaintiff's first amendment rights under the United States Constitution.

75. The Plaintiff is entitled to an award of monetary damages, including punitive damages, in an amount to be determined by a jury, equitable relief, and the reasonable attorney fees and costs of this lawsuit pursuant to 42 U.S.C. §§ 1983 and 1988.

### COUNT 4
*Fourteenth Amendment Procedural Due Process Rights Violation*

76. Plaintiff restates and realleges paragraphs 1-75 as if fully stated herein.

77. The Fourteenth Amendment protects the right of a citizen to engage in any of the common occupations of life.

78. Plaintiff has a right to engage in her profession as a school principal under the Fourteenth Amendment.

79. The Defendants violated Plaintiff's due process rights under the Fourteenth Amendment to the United States Constitution by taking an adverse employment action against the Plaintiff without providing the Plaintiff a meaningful opportunity to refute the charges.

80. The public statements, both written and verbal, made by the Defendants have damaged the Plaintiff's standing in the community.

81. The public statements, both written and verbal, made by the Defendants have impaired or reasonably prevented the Plaintiff's chances of future employment as a school principal in Vermont, have damaged her professional reputation, and have now prevented her from being able to participate in other equity and leadership programs in which she was previously involved.

82. The Defendants, acting under color of State Law, violated the Plaintiff's Fourteenth Amendment due process rights.

11

83. The Plaintiff has been injured by the Defendants' violation of her fourteenth amendment due process rights.

## COUNT 5
### *Defamation*

84. Plaintiff restates and realleges paragraphs 1-83 as if fully stated herein.

85. Some of Defendants' statements, both written and verbal, regarding the Plaintiff are false and defamatory including statements that Plaintiff's Facebook Posts were "outright racist" as made to the Valley News and published on the Valley News' website.

86. The Defendants statements that the Plaintiff's Second Facebook Post "acknowledged no culpability, expressed no specific contrition or empathy, and showed no humility" and that her continued employment would "damage the school and students" are false and defamatory.

87. The School Board's Public Statement contains false statements and is defamatory as to the Plaintiff

88. The School Board's Public Statement was published on the WSESU website and sent via email to parents, caregivers, and staff of the Windsor School.

89. The Defendants knew, or should have known, that their statements were false and defamatory.

90. As a result of the Defendants' public statements as alleged in this Complaint, Plaintiff's standing in the community has been harmed and her ability to obtain future employment and future earnings has been harmed.

## COUNT 6
### *Breach of Employment Contract*

91. Plaintiff restates and realleges paragraphs 1-90 as if fully stated herein.

92. The requirements of 16 V.S.A. § 243 are incorporated as terms in all employment contracts between a school district and a principal in Vermont.

93. Plaintiff was dismissed from her position of principal at The Windsor School on June 12, 2020, when she received written notice from the Superintendent that she had been placed on administrative leave, that she was to have no contact with the students or staff, and that she was instructed to negotiate a severance agreement with the district.

94. Plaintiff was constructively discharged from her position of principal at The Windsor School on June 12, 2020, when the School Board made public statements about her as alleged in this Complaint.

95. Plaintiff submitted a written request for a hearing with the School Board pursuant to 16 V.S.A. § 243 on June 25, 2020, less than 15 days after she received notice of the School Board's decision on June 12, 2020.

96. The Defendants did not schedule a hearing consistent with the requirements of 16 V.S.A. § 243(d) within 15 days of Plaintiff's request and as of the filing of this Complaint, no hearing consistent with the requirements of § 243 has been scheduled in this matter.

97. The Defendants assert that Plaintiff's request for a hearing was not appropriate because, at the time, Plaintiff had only been placed on administrative leave and had not officially been dismissed/terminated at that time.

98. The Defendants have publicly asserted that Plaintiff was terminated for cause based on the vote to terminate the Plaintiff for cause July 27, 2020, and the §243(d) hearing that was held in connection with the Defendants vote on July 27, 2020.

99. The Defendants' failure to adhere to the procedures of 16 V.S.A. § 243 is a breach of the Plaintiff's employment contract.

100.  Plaintiff has been harmed by the Defendants' breach of her employment contract.

WHEREFORE, the Plaintiff, Tiffany Riley, demands judgment against the Defendants for declaratory relief, damages, and such other relief as the Court determines to be just and proper as follows:

1. The Court issue a declaratory judgment that the Plaintiff was dismissed/terminated, or alternatively, constructively discharged by the Defendants on June 12, 2020, as a matter of law.

2. The Court should award such damages and relief as are appropriate, including compensatory damages (including all consequential harm that may have resulted), and punitive damages, for the violations of the Plaintiff's First and Fourteenth Amendment rights under the United States Constitution.

3. The Court should award damages based upon Plaintiff's defamation claims.

4. The Court should award damages based on the Defendants' breach of the Plaintiff's employment contract.

5. The Court should award attorneys' fees and costs of the litigation pursuant to 42 U.S.C. §§ 1983 and 1988.

6. The Court should order any such other relief as the Court determines is just.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all counts alleged in this Complaint.

DATED at Rutland, Vermont, this __5__ day of July 2022.

                                             MEUB ASSOCIATES, PLC

By: _____
William H. Meub, Esq., VT Bar # 869
Andrew J. Snow, Esq., VT Bar # 5580
*Attorneys for Plaintiff, Tiffany Riley*
65 Grove Street
Rutland, VT 05701
(802) 747-0610
meub@yourvtlawyer.com
snow@yourvtlawyer.com
betsy@yourvtlawyer.com